BLACKHAWK PONTIAC SALES, INC., *et al.*, Plaintiffs-Appellees, *v.* GEORGE ORR *et al.*, Defendants-Appellants.

Second District   No. 79-74

Opinion filed May 29, 1980.

Thomas W. Schmitt, of Franks & Schmitt, of Marengo, for appellants.

Richard D. Gaines and Bradley T. Koch, both of Welsh, Holmstrom and Gaines, Ltd., of Rockford, for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Edgar Futrell, appeals from the judgment of the trial court awarding the plaintiff, Blackhawk Pontiac Sales, Inc., a judgment against Futrell in the amount of $17,550 and another judgment against Futrell in favor of Joe Hume's Quality Leasing Company (an associated company) in the amount of $3,000.

Futrell is a licensed used-car dealer in Wheeling, Illinois. The defendant, George Orr, is a used-car dealer located in Minnesota who for several years prior to the transaction in question dealt with Futrell, buying cars from him for resale in Minnesota. George Orr is not a licensed dealer in Illinois.

On or about September 29, 1977, Orr came to Futrell's place of business and said he wanted to buy some cars. After looking over Futrell's lot he selected six used cars and they settled on a price for each car. Orr gave Futrell a check for each car and the cars were delivered to Orr. About two weeks later, around October 13, Futrell's bank notified him that the checks which Orr had given him were not good—two of them came back NSF and the other four were marked "account closed." Futrell called Orr and Orr said he did not have the money to cover the checks

immediately but he would "float" Futrell some cars to take care of the debt. Futrell said that would be OK with him. A few days later, Orr went to Blackhawk Pontiac in Rockford, where he had some years before been acquainted, and inquired about purchasing some used cars. He selected eight used cars and presumably because of his previous dealings at Blackhawk Pontiac and because they thought he was a licensed dealer, they accepted his check drawn on a Minnesota bank. They gave him a bill of sale and the titles to the cars he had selected. Orr then had these cars delivered from Blackhawk Pontiac's lot to Futrell's lot. Futrell gave him checks for the cars and Orr then endorsed the checks back to Futrell, thus wiping out the original debt which Orr owed to Futrell because of the bad checks he had given for the purchase of September 29.

A week or two later, Blackhawk was notified that the Orr checks were no good and they called Futrell and demanded the return of the cars they had sold to Orr and which Orr had in turn transferred to Futrell. Futrell told them that he had the titles to the cars and he was going to sell them—which he did. Blackhawk and Joe Hume's Quality Leasing—which owned one of the cars Orr had bought—then sued Orr and Futrell to recover the purchase price of the cars they had sold to Orr. A default judgment in the sum of $21,750 was entered against George Orr, who failed to appear or answer. Futrell defended on the ground that he had acquired title to the cars in a bona fide sale from Orr and it was Blackhawk's carelessness in accepting an out-of-town check and on the strength of that turning titles to the cars over to Orr, that had precipitated the fraud and the consequent loss to Blackhawk. He contended that since Blackhawk had made the loss possible they should not be allowed to recover from Futrell, citing section 2—403 of the Uniform Commercial Code. Ill. Rev. Stat. 1977, ch. 26, par. 2—403(1).

The key witness in the situation was, of course, Orr. Blackhawk's attorney got in touch with Orr's attorney in Minnesota and was promised by him that he would have full cooperation from Orr. Blackhawk's attorney contends that for that reason he did not take Orr's deposition in Minnesota. However, at the trial, Orr did not appear as he had promised. Blackhawk's attorney, apparently feeling confident of the outcome on the basis of the facts of the transaction, did not ask for a continuance but, after presenting his case without Orr as a witness, rested. The trial court gave judgment for Futrell—except as to $1,700 representing the price of a 1973 Dodge car for which no certificate of title had been delivered to Futrell.

Blackhawk then filed a motion to vacate the judgment and for leave to reopen the trial for further evidence. This motion was made within a few days of the original judgment, well within the 30 days of the original judgment. In support of the motion, Blackhawk presented the affidavit of

George Orr claiming that his failure to appear for the trial was due to his having inadvertently overslept because of some sleeping potion he had taken due to his heart trouble. The attorney also presented the affidavit of Orr's Minnesota counsel to the effect that the Minnesota attorney had informed Blackhawk's counsel that Orr was ready and willing to appear as a witness at the trial. The reason for this affidavit was apparently in order to show that Blackhawk's attorney had no reason to depose Orr in Minnesota, trusting that he was going to appear voluntarily as he had promised.

The trial court then vacated the original judgment and reopened the proofs for further testimony from George Orr. Orr's testimony was favorable to Blackhawk and unfavorable to Futrell in that Orr indicated that Futrell knew that Orr had given Blackhawk bad checks for the automobiles that Orr was delivering to Futrell. He testified that he had told Futrell that he would "float" some cars to Futrell—meaning, judging from his testimony, that he would give checks for the cars which actually were not good, hoping that he could sell the cars and acquire the funds to cover the checks by the time they were presented, or that the holder of the checks would deliberately not present the checks immediately for payment. This would allow him to cover the checks by selling the cars to a third party. At the conclusion of the reopened trial the court gave judgment for Blackhawk and Hume against Futrell.

■■ In this appeal Futrell contends that the trial court abused its discretion in "granting a new trial." He cites several cases to support this contention, but these cases are not applicable to the case before us. In the first place they are all, with one exception, jury cases, and there is considerable difference between reopening proofs in a bench trial and granting a new trial in a jury case, after the verdict has been rendered. They are all cases where the court refused to grant a new trial on the basis of newly discovered evidence or a newly found witness, but no case is cited by the appellant wherein the trial court was reversed because within term time it reopened proofs in a bench trial after the case was closed and judgment entered. It is generally recognized that the trial court has discretion to vacate its own judgment within term time. (*Village of LaGrange Park v. Hess* (1928), 332 Ill. 236; *Marshall Field & Co. v. Nyman* (1918), 285 Ill. 306; *Harvey v. Harris Trust & Savings Bank* (1979), 73 Ill. App. 3d 280.) While this discretion is not unlimited, it will not be regarded as having been abused where the opening or vacating of the prior judgment is done to promote substantial justice between the parties. *Czyzewski v. Gleeson* (1977), 49 Ill. App. 3d 655.

■■ We do not consider the vacating of the judgment in this case and the reopening of proofs in order to hear the key witness, Orr, an abuse of discretion. Bearing in mind that Orr's attorney had assured Blackhawk's

attorney that Orr would be present to testify at trial and that an out-of-State deposition of a witness is time consuming and less satisfactory than direct testimony and the taking of such deposition would probably preclude having Orr personally present, we cannot say that the failure to take the deposition of Orr was such negligence as to preclude opening the judgment. Considering the importance of Orr in resolving the fundamental issues involved, it is apparent that the trial court in opening the case for further proofs was attempting to promote the ends of justice in a difficult case. Considering the circumstances surrounding his decision to vacate the original judgment and reopen proofs, we think the ends of justice were served by granting the motion and there was no abuse of discretion.

■■ Futrell's final argument is that the trial court's judgment against him was against the manifest weight of the evidence. The pivotal question, of course, is whether Futrell was a good faith purchaser from Orr. Section 2—403(1) of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 2—403(1)) provides in pertinent part as follows:

> "A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though
>
> * * *
>
> (b) the delivery was in exchange for a check which is later dishonored, or
>
> * * *
>
> (d) the delivery was procured through fraud punishable as larcenous under the criminal law."

Futrell invokes this section of the Uniform Commercial Code, contending that he was a purchaser in good faith from Orr and without notice of any fraudulent dealing on Orr's part which would affect Orr's title to the automobiles purchased from Blackhawk. He argues that the burden was on Blackhawk to establish that he, Futrell, was not a good-faith purchaser from Orr and that the evidence presented does not sustain that burden. Futrell says he was a purchaser and that he "gave value" for the vehicles transferred to him by Orr. Futrell bases his good faith on the contention that, having dealt with Orr for many years without any trouble, he naturally accepted the Blackhawk automobiles without question and without any suspicion. This is a plausible argument if we disregard the immediately preceding transaction between Orr and Futrell, but in the light of that transaction, the argument is a specious one.

In his testimony Orr said he told Futrell that he would "float" some cars to Futrell, and Futrell could not have believed that Orr had made a bona fide purchase from Blackhawk since he knew that Orr was without funds. Moreover, while Futrell contends that he had no notice of any dishonest dealings on Orr's part from their previous dealings, actually at the time Futrell "bought" the Blackhawk cars from Orr he was acutely aware that Orr, a couple of weeks previously, had given him worthless checks on a closed account in payment for six automobiles Futrell had sold him. Not only that, but Futrell clearly associated the two deals—his sale to Orr out of his own lot and Orr's sale to him from Blackhawk's lot. Futrell knew from Orr's own admission that he was without funds and could not cover the checks he gave Futrell. It is clear, therefore, that he knew when Orr delivered the eight cars to him from another dealer that (a) these cars were not paid for and (b) that the whole transaction was simply for the purpose of wiping out Orr's previous debt to Futrell. Since the transaction whereby Futrell acquired cars from Orr was clearly a sequel to the previous transaction whereby Orr acquired the cars from Futrell, Futrell's claim of good faith and lack of any suspicions sounds hollow. Futrell asserts that he gave value for the Blackhawk cars, but the testimony of Futrell and Orr indicates that Futrell paid nothing for the Blackhawk automobiles—the checks he gave Orr were endorsed back to Futrell a day or two later to wipe out the previous bad checks Orr had given to Futrell. Moreover, Futrell retained the original Orr checks instead of giving them back to Orr or destroying them. The claim that he gave value to Orr for the Blackhawk cars is therefore obviously false— what happened was that Futrell was reimbursed for the cars he had sold Orr by acquiring other cars from Orr which he knew Orr had acquired from another dealer without proper consideration. Clearly, therefore, Futrell was not a good-faith purchaser for value as he claims. He therefore cannot invoke section 2—403(1) of the Uniform Commercial Code in his behalf. Considering the two transactions—Futrell's sale to Orr and Orr's sale to Futrell—together, we believe the manifest weight of the evidence, considered in its logical sequence, clearly sustains the trial court's final judgment.

The judgment of the circuit court of Winnebago County is affirmed.

Judgment affirmed.

SEIDENFELD, P. J., and NASH, J., concur.